[Cite as *State v. Artripe*, **2014-Ohio-4658.**]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| ROGER E. ARTRIPE | : | Case No. 14CA8 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Knox County Court
                                  of Common Pleas, Case No.
                                  13CR05-0083


JUDGMENT:                         Affirmed in part, Reversed in part,
                                  and Remanded


DATE OF JUDGMENT:                 October 17, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CHARLES T. MCCONVILLE                     STEPHEN T. WOLFE
Knox County Prosecutor                    1350 W. 5th Ave., Suite 119
                                          Columbus, OH 43212
By: JOSEPH D. SAKS
Knox County Assistant Prosecutor
117 East High Street, Suite 234
Mount Vernon, OH 43050

*Baldwin, J.*

{¶1}   Appellant Roger E. Artripe appeals a judgment of the Knox County Common Pleas Court convicting him of rape (R.C. 2907.02(A)(1)(b)) and gross sexual imposition (R.C. 2907.05(A)(4)) and sentencing him to a term of life imprisonment with a possibility of parole after fifteen years.  Appellee is the State of Ohio.

STATEMENT OF FACTS AND CASE

{¶2}   Appellant's daughter Ashley contacted law enforcement on February 24, 2013, to report that her four-year-old stepdaughter, A.S., had informed her of improper sexual conduct by appellant.  Detective Tom Bumpus recommended that Ashley take A.S. to the Center for Family Safety and Healing (hereinafter "Center") at Nationwide Children's Hospital in Columbus for an examination.

{¶3}   Det. Bumpus interviewed appellant, who admitted to babysitting A.S. on Tuesdays.  Appellant acknowledged putting cream or ointment on A.S., and while he denied touching A.S., he told the detective that he suffered from memory lapses, and might have touched A.S. during a "blackout session."

{¶4}   Kerri Wilkinson, a licensed social worker and forensic interviewer, interviewed A.S. at the Center.  The interview was videotaped.  A.S. was asked to identify body parts on anatomically correct drawings of a naked boy and girl.  A.S. identified the vaginal area as a "booger," and the penis as a "booger."  A.S. told Wilkinson that Papaw Roger puts his booger inside of her booger, and it hurts.  She also told Wilkinson that Papaw Roger's booger goes inside of her butt, and it hurts.  A.S. told Wilkinson that slobber and pee come out of Papaw Roger's booger when he goes potty, and that his slobber is white.

{¶5}     After the interview, pediatric nurse practitioner Gail Hornor conducted a physical examination of A.S.   Hornor watched A.S.'s interview through  closed circuit television, and also discussed the interview with Wilkinson to determine the appropriate medical examinations and testing.   A.S. tested negative for sexually transmitted diseases, and her anogenital examination was normal.

{¶6}     On March 5, 2013, appellant's daughter Amanda made an audio recording of a confrontation she and her mother had with appellant concerning the allegations. Appellant stated that he touched A.S., that he does not know why, and that he is getting help.

{¶7}     Appellant was indicted by the Knox County Grand Jury on one count of rape and one count of gross sexual imposition.  The case proceeded to jury trial.

{¶8}     At trial, A.S. was found incompetent to testify, but the videotape of Wilkinson's interview with A.S. was admitted into evidence over appellant's objection. Appellant testified at trial that he sometimes babysat A.S.  He testified that she had soiled her pants, and he put her in the bathtub.  When she got out of the tub, he noticed that "her bottom was ate up," either with diaper rash or bed bug bites.  He put Desitin ointment on her bottom.  He testified that the guilt he felt was for putting diaper ointment on an older child like A.S., rather than letting a female family member do it. He testified that for the last ten years he had been unable to obtain an erection or ejaculate.  His wife also testified that for the last ten years, appellant was unable to perform sexually.

{¶9}     Appellant was convicted of both charges.  The trial court found that the convictions merged, and sentenced appellant for rape.  Because the victim was under

the age of ten, the court sentenced appellant to a term of imprisonment of life with possibility of parole in fifteen years.  Appellant assigns four errors on appeal:

{¶10} "I.   THE COURT ERRED WHEN IT PERMITTED THE INTRODUCTION OF EVIDENCE THAT WAS IMPERMISSIBLE AS BOTH HEARSAY AND IN VIOLATON OF APPELLANT'S RIGHT TO CONFRONT WITNESSES AGAINST HIM.

{¶11} "II.   THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS.

{¶12} "III.    THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "IV.     THE APPELLANT WAS PREJUDICED BY INEFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶14} In his first assignment of error, appellant argues that the court erred in admitting into evidence the videotape of A.S.'s interview at the Center, as the video was impermissible hearsay and violated his Sixth Amendment right to confront witnesses against him.

{¶15} In *State v. Arnold*, 126 Ohio St. 3d 290, 933 N.E.2d 775, 2010-Ohio-2742, the Ohio Supreme Court considered identical arguments concerning admission of a videotape of a child victim interview conducted at the Center by a social worker/forensic interviewer.  As in the instant case, the victim was unavailable to testify.

{¶16} The Supreme Court noted that the objective of a child-advocacy center is neither exclusively medical diagnoses and treatment, nor solely forensic investigation. *Id.* at ¶29.   Child advocacy centers are unique in that multidisciplinary teams cooperate

so the child will not have to tell the story multiple times. *Id.* at ¶33. Thus, the interview serves a dual purpose of gathering forensic information to investigate and potentially prosecute a defendant for the offense, and eliciting information necessary for medical diagnosis and treatment of the victim. *Id.*

{¶17} The *Arnold* court found that some of the statements the victim made in the interview served primarily a forensic or investigative purpose and were therefore testimonial in nature, including statements that the defendant shut and locked the bedroom door before raping her, descriptions of where her mother and brother were when she was in the bedroom with the defendant, descriptions of the defendant's boxer shorts and of him removing them, what the defendant's "pee-pee" looked like, and her statement that the defendant removed her underwear. *Id.* at ¶34. Because the interviewer acted as an agent of the police in obtaining these statements, the court proceeded to an analysis of whether the primary purpose of the interrogation was to meet an ongoing police emergency. The court concluded that the primary purpose of the interview was not to meet an ongoing emergency, but rather to further the state's forensic investigation, and the statements were thus inadmissible without a prior opportunity for cross-examination pursuant to the Confrontation Clause. *Id.* at ¶36, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶18} However, other statements made to the interviewer were necessary for medical treatment, including that Arnold touched the victim's "pee-pee," that his "pee-pee" went inside her "pee-pee," that Arnold's "pee-pee" touched her butt, and that Arnold's hand and mouth touched her "pee-pee." *Id.* at ¶38. The court concluded that

these statements were nontestimonial and there was no basis in the law for concluding that the interviewer's dual capacity rendered these statements inadmissible. *Id*. at ¶41. Rather, the trial courts through *in limine* procedure should redact or exclude the portions of any statement that have become testimonial in nature. *Id*. The *Arnold* court remanded the case to the court of appeals to consider whether the admission of the victim's forensic statements were harmless pursuant to *State v. Conway*, 108 Ohio St. 3d 214, 842 N.E.2d 996, 2006-Ohio-791. *Id*. at ¶44.

{¶19} The victim in the instant case made statements to Wilkinson that were for medical diagnosis or treatment, and thus were non-testimonial and admissible pursuant to *Arnold*. Having identified male and female genitalia as "boogers," the victim told Wilkinson that Papaw Roger touched her booger, that his booger goes inside of her booger, that his booger goes inside her butt, that it hurts, and that white slobber comes out of his booger.

{¶20} However, other statements made by A.S. relating to appellant's conduct were testimonial in nature and therefore inadmissible pursuant to *Arnold*: Papaw Roger is the only one who hurts her butt, her description of what appellant's booger looks like, she is in the bedroom when he touches her booger, he doesn't say anything to her and she doesn't tell him that it hurts, appellant told her it was a secret, he puts her pants and underwear on the floor, Mamaw is at work, when Papaw Roger goes potty pee and white slobber come out of his booger, and when he's done putting his booger in her booger appellant puts her pants back on and makes her toast and waffles. As in *Arnold*, the primary purpose of this portion of the interview was not to meet an ongoing

emergency, but rather to further the state's forensic investigation and possibly pursue criminal charges against appellant.

{¶21} Because the trial court did not redact the testimonial portions of the video, we must determine whether admission of these statements were harmless pursuant to the standard set forth in *Conway*, *supra*. Whether a Sixth Amendment error is harmless beyond a reasonable doubt is not simply an inquiry into the sufficiency of the remaining evidence. *Id.* at ¶78. Rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Id.*

{¶22} Appellant was convicted of both rape and gross sexual imposition. However, the court merged the offenses and only sentenced appellant on the rape conviction. Rape is defined by R.C. 2907.02(A):

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶23} Sexual conduct is defined by R.C. 2907.01(A) as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."

{¶24} While there was evidence that appellant made statements which could be interpreted as an admission to touching A.S. in a sexual manner, the only evidence of sexual conduct as defined by R.C. 2907.01(A) came from the statements made by A.S. during the interview. While these statements were made for purposes of medical diagnosis and treatment and were therefore non-testimonial in nature, other details of the victim's encounters with appellant were testimonial in nature. These details, such as appellant telling her it was a secret, what his penis looked like and what comes out of it when appellant goes potty, appellant removing her underwear and pants and putting them on the floor, appellant taking her into the bedroom, Mamaw being at work when this happens, and appellant putting her pants back on and making her toast and waffles lend credibility to the non-testimonial statements of the victim, who was previously found incompetent to testify after stating that she did not know what it means to tell a lie or what a lie is. Tr. 131. The medical examination did not corroborate A.S.'s statements concerning penetration, nor did any other evidence in the case. Therefore, we find there is a reasonable probability that the testimonial statements included in the video might have contributed to appellant's rape conviction, and the error in admitting the videotape in its entirety is not harmless as defined in *Conway, supra*. The trial court erred in failing to redact the portions of the tape that were testimonial in nature as to the rape conviction.

{¶25} However, as to the conviction of gross sexual imposition, we find that there is not a reasonable probability that admission of the entire videotape contributed to the conviction. Appellant was convicted of violating R.C. 2907.05(A)(4), which prohibits sexual contact with a person under the age of thirteen. Sexual contact is

defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Appellant admitted to touching A.S.'s buttock. While he testified that he was simply putting diaper ointment on A.S., during the audio recording appellant's daughter made of a confrontation with appellant, he stated that he touched A.S., that he does not know why, and that he is getting help. He also told police that he might have touched A.S. during a "blackout session." Although appellant argues that his testimony and that of his wife demonstrates he has not been able to have an erection or ejaculate for the last ten years, appellant's ability to physically perform sexually is not solely determinative of whether he touched A.S. for the purpose of sexually arousing or gratifying himself. The majority of the evidence concerning the charge of gross sexual imposition came from other testimony in the case, and not from the testimonial statements on the videotape. Therefore, we find admission of the entire videotape is harmless as to the conviction of gross sexual imposition.

{¶26} The first assignment of error is sustained as to the conviction of rape, and overruled as to the conviction of gross sexual imposition.

II., III.

{¶27} In his second assignment of error, appellant argues that the judgment is not supported by sufficient evidence. In his third assignment of error, appellant argues that the judgment is against the manifest weight of the evidence. As to the conviction of rape, these assignments of error are rendered moot based on our disposition of

appellant's first assignment of error. Therefore, we address appellant's arguments only as to the conviction of gross sexual imposition.

{¶28} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶29} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶30} Appellant was convicted of violating R.C. 2907.05(A)(4), which prohibits sexual contact with a person under the age of thirteen. Sexual contact is defined by R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Appellant admitted to touching A.S.'s buttock. While he testified that he was simply putting diaper ointment on A.S., during the audio recording appellant's daughter made of a confrontation with appellant, he stated that he touched A.S., that he does not know why, and that he is

getting help. He also told police that he might have touched A.S. during a "blackout session." Although appellant argues that his testimony and that of his wife demonstrates he has not been able to have an erection or ejaculate for the last ten years, appellant's ability to physically perform sexually is not solely determinative of whether he touched A.S. for the purpose of sexually arousing or gratifying himself.

{¶31} From appellant's admission that he touched A.S. and his admission that he was seeking help because he did not know why he touched A.S., the jury could have concluded that appellant touched A.S. for the purpose of sexual gratification or arousal. Further, the jury did not lose its way in concluding that appellant touched A.S. for the purpose of sexual gratification or arousal from the evidence presented in the case. The judgment is not against the manifest weight or sufficiency of the evidence.

{¶32} The second and third assignments of error are overruled.

IV.

{¶33} In his fourth assignment of error, appellant argues that his trial counsel was ineffective for failing to make a Crim. R. 29 motion for a directed verdict of acquittal based on insufficient evidence. Again, we consider this assignment only as to the conviction for gross sexual imposition, as it is rendered moot as to the rape conviction based on our disposition of the first assignment of error.

{¶34} A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

{¶35} Because we have found in appellant's second assignment of error that the evidence was sufficient to support a judgment of conviction of gross sexual imposition, appellant has not demonstrated that the result of the proceeding would have been different had counsel moved for a directed verdict of acquittal.

{¶36} The fourth assignment of error is overruled.

{¶37} The judgment of the Knox County Common Pleas Court is affirmed as to the conviction of gross sexual imposition, and reversed as to the conviction of rape. This case is remanded to that court for further proceedings according to law, consistent with this opinion. Costs are split evenly between the parties.

By: Baldwin, J.

Hoffman, P.J. and

Wise, J. concur.